# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

V.

RUSSELL CHARLES TAYLOR

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:15-mj-0334

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

In or about September 2002 through in or about January 2015, in Marion County, in the Southern District of Indiana defendant did, Counts 1-7 - Producing Child Pornography in violation of 18 U.S.C. § 2251(a)

In or about 2002 through in or about May 2015, in Marion County, in the Southern District of Indiana defendant did, Count 8 - Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B)

I further state that I am a Task Force Officer, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

_____
Task Force Officer, Darin Odier, FBI

Sworn to before me, and subscribed in my presence

May 4, 2015                                                          at   Indianapolis, Indiana
**Date**

Mark J. Dinsmore, U.S. Magistrate Judge                              _____
**Name and Title of Judicial Officer**                                Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Darin Odier, hereby depose and state as follows:

1. **Affiant**: I am a Detective in the Cybercrime Unit of the Indianapolis Metropolitan Police Department. I am also a cross designated Task Force officer assigned to the FBI the Indianapolis Violent Crimes Against Children Task Force.

2. **Experience**: I have over 25 years of law enforcement experience. I have investigated State and Federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. I have written numerous search warrants involving internet crimes against children cases and participated in their execution.

3. **Training**: I have attended the Crimes Against Children Conference in Atlanta, Georgia and attended numerous classes related to investigating the online sexual exploitation of children. I am also a member of the Indiana Internet Crimes Against Children Task Force, which includes numerous federal, state and local law enforcement agencies. I am currently assigned to operate in an undercover capacity on the Internet to identify and investigate persons attempting to exploit or solicit sexual acts with children or trafficking in child pornography.

4. **Information provided**: The statements in this affidavit are based on information obtained from my observations and communications, as well as information learned from other law enforcement officers and witnesses. The affiant has not included each and every fact known to me concerning this

investigation. I have set forth only the facts that I believe are necessary to establish probable cause that to believe that the persons listed below has committed criminal offenses.

5. **Requested action**: I make this affidavit in support of an application for a Criminal Complaint and Arrest warrant charging **Russell C. Taylor ("Russell Taylor")** with criminal offenses.

6. **Probable cause**: For the reasons listed below, there is probable cause to believe that **Russell Taylor** has committed these offenses:

7. **Counts 1-7**: On seven separate occasions in the Indianapolis area, **Russell C. Taylor** sexually exploited four children in his residence by using them to produce child pornography, in violation of 18 U.S.C. § 2251(a).

8. **Count 8**: Between in or about 2005, and in or about April 2015, **Russell C. Taylor** possessed multiple computer storage devices containing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

9. **Initial Investigation**: In September 2014, Master Trooper Patrick Etter ("Etter") of the Indiana State Police (ISP) contacted ISP Trooper Kevin Getz ("Getz") regarding a possible bestiality and child pornography investigation involving a person identified as **Russell Taylor**. Etter stated he was approached by an adult female ("Jane Doe"), who told him that Russell Taylor offered to send her images or videos of young girls through text messages. Russell Taylor made this offer during a series of text messages that included discussions of sexual matters, including bestiality and sadistic or masochistic abuse.

10. On October 3, 2014, Getz spoke with Jane Doe by telephone. She stated she received several text messages from Russell Taylor which concerned her and that she had not deleted these messages from her mobile phone. Getz requested an interview and her consent to extract the text messages from her cell phone. Jane Doe consented to the interview and agreed to a search of her phone.

11. Subsequently, Getz contacted Detective Sergeant Christopher Cecil ("Cecil") of the ISP Cyber Crimes Unit to request assistance with the interview and the forensic examination of Jane Doe's phone.

12. On October 3, 2014, Cecil and Getz met with Jane Doe at her residence and discussed this matter. Getz obtained Jane Doe's consent to search her cell phone and Cecil began to perform a forensic extraction of the data in it.

13. Jane Doe explained that said she had become friends with Russell Taylor and his wife, through Jane Doe's husband. The friendship continued after Jane Doe's husband died in 2013. During the course of the friendship, text messages concerning sexual matters were exchanged between Jane Doe, Russell Taylor, and Russell Taylor's wife.

14. **Text messages**: During the course of the interview, Jane Doe stated Russell Taylor asked her if he and another adult female she identified could come to Jane Doe's residence and engage in sexual activity with a horse. While Jane Doe boards horses on her property, she did not agree that Russell Taylor could come to her house for this purpose.

15. Getz asked Jane Doe if she thought the text messages were sent in a joking manner and she responded: "You could tell he was serious."

16. Jane Doe told Getz that she received an image file via text from Russell Taylor that depicted a dog licking the nude genital area of an adult female.

17. Jane Doe said she also received a request from Russell Taylor asking if she wanted to see images of "young girls." Jane Doe stated that she received a text message from Russell Taylor stating that he had traveled to Thailand in the past.

18. Based upon my training and investigation experience, I know that some persons who have a sexual interest in children have been known to travel to Thailand in order to engage in child sex tourism.

19. Cecil asked Jane Doe if Russell Taylor sent her images or videos of young girls. Jane Doe stated no. When asked if Russell Taylor had ever expressed interest in engaging in sexual activity with children, she responded: "Not that I can remember, but he's the type of person that seems to be very sexually involved in whatever goes."

20. Getz asked if Russell Taylor sent her any other images of sexual activity with animals. Jane Doe said the dog image was the only image she received from him, but she knew "they liked to be sexually involved with other things" including bondage and "messing around" with horses. Jane Doe described the bondage acts to include "handcuffs, ropes and stuff."

21. Getz asked Jane Doe if she had ever visited Russell Taylor's residence and she answered yes. She said that there was a computer in the home and he had a smart phone.

22. The extraction of data from Jane Doe's cell phone was not complete by the end of the interview. Therefore, Jane Doe consented to allow the investigators to take custody of the cell phone to complete the forensic extraction.

23. After Cecil completed the forensic extraction and analyzed the extracted data, he emailed Getz a timeline he generated with forensic software. The timeline displayed in chronological order all of the actions the user performed on the mobile phone to include: internet history, call logs, applications opened, texting, etc.

24. After reviewing the timeline spreadsheet, Getz found multiple text message conversations between Jane Doe, Russell Taylor, and/or Russell Taylor's wife. These messages included discussions of sexual matters. In addition, the text messages generally included an exchange discussing child pornography, bestiality, and meeting for sexual purposes. The following includes some portions of this communication, which is generally consistent with the information provided by Jane Doe during her interview.

25. On September 20, 2014, Russell Taylor sent Jane Doe a message stating: ". . . said check this out. (In private lol)" along with a link to Website Number 1 (URL redacted, but known to the affiant). Later that day, Russell Taylor sent Jane Doe a link to Website 2 (URL redacted, but known to the

affiant). Russell Taylor then sent Jane Doe a message stating "Click on link or cut and paste on search bar. :-)"

26. On September 28, 2014, Jane Doe sent Russell Taylor a message requesting a picture. Russell Taylor then sent Jane Doe a message stating: "Lol. Tell me what you want to see. I got it all." Jane Doe replied: "Everything." Russell Taylor then sent Jane Doe a message stating "Pics or video?" Jane Doe replied: "Both?" and "I want that"

27. Russell Taylor then sent Jane Doe a message stating "You get them". Jane Doe replied: "Yeah! Can I have more?" and "I love them! So hot".

28. Russell Taylor then sent Jane Doe a message stating: "Yes What. Type? Her with dogs, orgy, s and m, young girls, etc". Jane Doe then replied: "Young orgy".

29. Jane Doe sent Russell Taylor a message stating: "Any of you and her?". Russell Taylor replied: "Yes".

30. Russell Taylor then sent Jane Doe a message asking: "How young are you ok with". Jane Doe replied: "Legal age". Russell Taylor then replied "Ok". And he then said: "I wanted to ask lol. Keep in mind we do travel to Thailand on occasion :-)".

31. **Website information**: During the course of this investigation, Getz visited Website 1 and Website 2. He determined both were bestiality-dedicated websites that depicted images of men and women engaged in sexual activity with various animals.

32. **First state search warrant**: On April 23, 2015, a state judge in Marion County, Indiana, issued a warrant to search the Indianapolis residence of Russell Taylor and his wife.

33. On April 29, 2015, the affiant, along with assisting officers served the search warrant at Russell Taylor's residence in Indianapolis, Indiana. Russell Taylor was present during the search. The purpose of the search was to look for evidence of bestiality, including image or videos.

34. During a forensic search of multiple digital media cards, detectives observed multiple video files of nude or partially nude minor children in bedrooms and a bathroom. Many of these videos showed the exposed genitals or pubic area of the children. The minors did not appear to be aware that they were being filmed. When these files were discovered during the forensic exam, the examiners stopped the search in order to obtain an additional warrant.

35. **Second state search warrant:** On April 29, 2015, an additional search warrant was issued by a state judge in Marion County. This search warrant authorized the search of all seized items in the original warrant for evidence of child pornography or child exploitation.

36. **SanDisk 8GB SD card**: A forensic examination of a SanDisk 8GB SD card recovered from Russell Taylor's home office showed that it contained multiple .jpg images, many of which included Russell Taylor in the picture. Also recovered on this SD card were multiple one minute video clips taken in a bathroom. Many of these videos clips appeared to parts of larger series and showed minor children nude, or in various states of undress with their genital

or pubic areas visible. Included on the SD card are the following videos (Descriptions by affiant).

37. **V20130326000070.Avi (Count 1):** This is a one minute video with a time stamp beginning at 10:17:34 showing a minor girl ("Child 1") standing nude in a bathtub. She wraps her hair in a towel, exits the bathtub, and is handed a towel. While in the bathtub, her nude genitals or pubic area is visible.

38. **V20130331000012.Avi (Count 2):** This is a one minute video with a time stamp beginning at 13:04:59 showing a minor girl ("Child 2") standing nude in a bathtub. While in the bathtub, her nude genitals or pubic area is visible.

39. **V20130326000014.Avi (Count3):** This is a one minute video with a time stamp beginning at 03:56:17 showing a minor boy ("Child 3") standing nude in a bathtub. While in the bathtub and as he exits, his genitals or pubic area is visible.

40. During the course of the investigation, the affiant was able to identify Child 1, Child 2 and Child 3. Their relationship to Russell Taylor in a manner known to the affiant and they would sleep at Russell Taylor's residence at various times.

41. **V20130326000051.Avi (Count 4):** This is a one minute video with a time stamp beginning at 08:00:41 showing a minor girl ("Child 4") standing nude in a bathtub. Her nude genital or pubic area is visible while in the bathtub, and after stepping out.

42. During the course of the investigation, the affiant was able to identify Child 4 through interviews with other witnesses who know her. Child 4's relationship to Russell Taylor is known to the affiant, but she is not related to him. She would sleep at Russell Taylor's residence at various times.

43. The videos on this SD card did not appear to show the bathrooms in Russell Taylor current Indianapolis residence.

44. On April 30, Getz went to Russell Taylor's prior Indianapolis residence, where he from January 2011 to June 2014. Getz spoke to the current residents and was given consent to enter the residence to photograph and record the interior. Photographs showing the upstairs bathroom appear to match the bathroom in the videos recovered from the SanDisk 8GB SD card.

45. **8GB micro SD card**: A forensic examination of an 8GB micro SD card recovered from Russell Taylor's home office showed multiple videos clips taken in bathrooms and bedrooms of both Taylor's current and previous Indianapolis residences.

46. In video file **V2015013000004.avi**, the Russell Taylor's face is visible while he is looking toward the camera and adjusting the aiming point of the camera.

47. The following videos were also found on this Micro SD:

48. **V2014100300008.avi (Count 5)**: This is a one minute video with a time stamp beginning at 00:45:38 and showing Child 2 standing nude in a bathtub. Her nude genitals or pubic area is visible while she is drying herself off with a towel.

49. **V2014063000101.avi (Count 6)**: This is a one minute video with a time stamp beginning at 20:25:10 and showing Child 2 standing nude in a bedroom and facing the camera with her nude genitals or pubic area is visible.

50. A forensic examination was also done on the IMAC computer recovered from Russell Taylor's desk in his home office. The examiners found 409 videos clips in a folder with the following path: \1Customer\MacintoshHD\Users\Russell Taylor\Desktop\Personal Stuff\Utilities. All of the videos in this folder were produced in a bathroom or bedroom of Russell Taylor's current Indianapolis residence. These videos were the only items in this folder. Among these videos was the following (Description by affiant).

51. **V2014070100016.AVI (Count 7)**: This is a one minute video with a time stamp beginning at 20:25:10 and showing Child 2 standing nude in a bedroom and facing away from the camera with her anal area visible, then facing the camera and inserting a tampon into her nude vaginal area. This video was not seen on any of the recovered SD or Micro SD cards.

52. **Silver twist 4 GB thumb drive (Count 8)**: A silver twist 4 GB thumb drive was also recovered from the desk in Russell Taylor's home office room. An examination of this device revealed a document file with Taylor's employer listed in the file name. Also forensically recovered from the thumb drive were multiple videos of child pornography in a folder entitled "Good stuff", including the following (description by affiant):

53. **Bd_mag_05_set_01_1.05.avi:** This is a 3:31 minute video showing a nude female approximately 12 years old wearing high heeled shoes. She is lying on her back with her knees spread and her vaginal area exposed. At 1:21 the camera zooms in for a close up of her vaginal area. This is commercially made child pornography from Eastern Europe similar to that seized in other investigations.

54. **Ativa 8GB thumb drive:** An Ativa 8GB thumb drive was also recovered from the desk in Russell Taylor's home office room. Videos of child pornography and child erotica were recovered, as were documents related to his employment as director of a foundation.

55. **Statement of Russell Taylor:** After being advised of his Miranda rights and signing a rights waiver, Russell Taylor gave a recorded statement to law enforcement. During the interview, he admitted that he placed a clock radio containing a hidden camera in a child's bedroom. He claimed that he did this to determine if the child was having sex with her boyfriend or stealing things from his wife.

56. During the interview, Taylor admitted that, in the past, he placed clocks with concealed cameras in various rooms though out the house. When asked which specific rooms, Taylor responded "Living rooms and just throughout the house." When asked why he had these cameras, Taylor stated "I've had Nanny cams forever".

57. Russell Taylor claimed that there have been "a lot" of people in and out of the residence and that items were stolen. When asked as to the last

time a camera was used, Taylor said, "This time last year". This answer is inconsistent with the date stamps on some of the video files, which include more recent activity.

58.   Russell Taylor acknowledged that a camera had been set up in his step daughter's room. He stated the room was used by multiple people and he claimed that his wife wanted to know if there was underage sex "going on". When asked if she set up the camera, Taylor initially answered yes. He then stated he wasn't sure if he or his wife set up the camera, stating "We both have set cameras up at different times".

59.   Taylor denied reviewing the video recordings and stated that his wife reviewed them. Taylor also acknowledged a camera being set up in a bathroom.

60.   When asked again what rooms the cameras were in, Taylor said "Like I said, it varies," and indicated they had been in the office, living room, and bedrooms. Taylor also acknowledged a camera had been set up in a bathroom.

61.   Russell Taylor claimed that there were no video images of "random people" in the house. He then stated "There's no underage sex on the videos to my knowledge". When asked again when he reviewed the videos, Taylor answered, "Rarely if ever". Asked again as to the last time the cameras had been used Taylor said "January maybe".

62.   Taylor explained that the feed from the concealed camera went to his Windows based laptop that he disposed of in March, 2015. Prior to

disposing of the computer, he backed up files on to SD cards and thumb drives.

63. **Further investigation of seized materials:** From recovered digital media found in the current Russell Taylor residence, this affiant has reviewed over 500 videos showing dozens of scenes. These include videos of a bedroom and bathroom at the prior Indianapolis residence as well as videos of a bathroom and a bedroom in the current Indianapolis residence. The affiant did not observe any videos showing sexual activity between Child 1, Child 2 or any boys. In fact, there were no boyfriends in any of the videos.

64. Also, the affiant did not observe any videos of the master bedroom, office, living room, or any other rooms other than the children's bathrooms and bedrooms.

65. The camera angles of the bedroom cameras generally show a narrow view of the room, with the bed only partially visible in most cases. This allowed the cameras to capture the children changing clothes or while undressed in a majority of these videos. Similarly, the camera angles of the bathroom videos are focused on the shower.

66. A majority of the scenes appeared to include nude children. Few scenes appear to show innocuous day-to-day activities, without nudity.

67. The recovered videos of child pornography are consistent in type with concealed camera videos in that they are typically videos of individual girls or a boy, nude, with their pubic area or genitals exposed.

68. Based on the file names, the time frame in which these videos were produced was between in or about September 2012 to in or about January 2015.

69. Also recovered from the IMAC computer were 12 text documents. These documents were stories about bestiality and incest, including sexual contacts between fathers and daughters. The content is consistent with the purpose of the original investigation of bestiality and with a sexual interest and attraction to children.

70. **Child Interviews:** On May 1, 2015, interviews were conducted of Child 1, Child 2 and Child 3, who have lived with Russell Taylor at various times at both the previous and current Indianapolis residence. All three children denied knowing they were being video recorded in these residences. Child 1 and 2 identified themselves and each other in screen shots taken from the videos. Child 1 also identified Child 4 from a screen shot.

71. Based on the file names, when the videos were produced, Child 1 would have been between 14-16 years old, Child 2 would have been between 11-13 years old, and Child 3 would have been between 9-11 years old. Child 4 is believed to have been between 14-16 years old.

72. From my training and experience, I know that the SD cards, micro SD cards, thumb drives, and IMAC computer are not manufactured in the state of Indiana, and therefore would have arrived in Indiana via interstate commerce.

73. **Conclusion**: Based upon the contents of this Affidavit, I respectfully request that the Court issue a Criminal Complaint and Arrest Warrant for Russell Taylor charging him with the offenses listed above.

_____
Det. Darin Odier
Task force officer

Subscribed and sworn to before me on May 4, 2015

_____
Mark J. Dinsmore
United States Magistrate Judge